NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| L.B., P.D., and R.P., | : | |
| | : | |
| Plaintiffs, | : | Civil No. 06-0934 (AET) |
| | : | |
| v. | : | **MEMORANDUM & ORDER** |
| | : | |
| GRANT, et al., | : | |
| | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.

This matter is before the Court upon Plaintiffs L.B., P.D., and R.P.'s (collectively,

"Plaintiffs") Motion for Summary Judgment and Defendants Carol Grant and Kevin M. Ryan's

(collectively, "Defendants") Cross-Motion for Summary Judgment.  The Court has decided these

Motions based upon the submissions of the parties and without oral argument pursuant to Fed. R.

Civ. P. 78.  For the reasons set forth below, Plaintiffs' Motion is denied, and Defendants' Cross-

Motion is granted.  The Court finds that Plaintiffs' claims are not yet ripe for review, and

therefore, Plaintiffs' Complaint is dismissed.

BACKGROUND

The parties have stipulated to the following facts.  Plaintiffs are adults with severe

developmental disabilities.  They receive both state and federal government assistance for their

daily living needs.  Each lives in group homes designed for individuals with severe disabilities,

funded by the New Jersey Department of Human Services, Department of Developmental

Disabilities ("DDD").  Plaintiffs also receive Social Security benefits from the federal

government.

Plaintiffs' Social Security benefits range from approximately $750 to $900 per month, to pay for expenses, such as personal or medical expenses, not covered by other government assistance programs.  For Plaintiffs L.B. and R.P., these Social Security benefits comprise the totality of their income.  Plaintiff P.D. earns approximately $350 per month as a file clerk as a supplement to his Social Security benefits.  Each Plaintiff has a family member who acts as a representative payee for the Social Security benefits.  A representative payee is appointed by the Social Security Commissioner, and is charged with using a beneficiary's Social Security benefits in the best interests of the beneficiary.  20 C.F.R. § 404.2035.

In January 2004, the DDD promulgated a regulation pertaining to contribution to care and maintenance of individuals such as Plaintiffs.  That regulation requires individuals who have unearned income to contribute seventy-five (75) percent of their disposable monthly income to the cost of their care and maintenance, with the requirement waived where an individual's contribution amounts to less than twenty (20) dollars.  N.J. Admin. Code § 10:46D-3.1(a)-(b).  Unearned income is defined as "income from sources other than wages . . . [including] Social Security benefits [and] Supplemental Security Income."  N.J. Admin. Code § 10:46D-1.3.

In the event that an individual, or his legally responsible relative ("LRR"), or legal guardian, fails to pay his contribution to the cost of care and maintenance in a timely fashion, the DDD may take a number of steps to address the deficiency.  First, in the event that payments are not received within either a ten-day or negotiated period,

> [T]he Division shall notify, in writing, the individual, his or her LRR(s), other responsible parties, and, if different, his or her legal guardian that the Division may initiate termination, collection or other appropriate action.

N.J. Admin. Code § 10:46D-5.1(b)(2).  Further,

> When there is a representative payee who has not paid the assessed amount, a notice shall be sent to the Social Security Administration or other agency or person administering benefits that the individual is in jeopardy of having his or her placement terminated . . . The Division shall request a change in the representative payee.

N.J. Admin. Code § 10:46D-5.1(d).  Where an individual is housed in a residential program, and either he or his LRR refuses to pay the cost of care and maintenance, the Division "shall file a collection or other appropriate action to recover the poriton of cost which the LRR(s) is responsible to pay." N.J. Admin. Code § 10:46D-5.1(g)(1).

On March 1, 2006, Plaintiffs filed a Complaint, challenging the validity of the DDD's regulations on its face in light of what they allege to be conflicting federal law.  Specifically, they allege that federal law and regulations prohibit the attachment of Social Security benefits by states, and the transfer or reassignment of Social Security benefits to claimants other than the beneficiary or representative payee.  Therefore, Plaintiffs argue that the DDD regulations are void because they violate the Supremacy Clause of the United States Constitution.  Plaintiffs seek a declaratory judgment that Defendants may not direct their Social Security benefits to be used towards state-funded care and maintenance, and seek an injunction prohibiting Defendants from enforcing the DDD regulations.

On September 11, 2007, Plaintiffs filed a Motion for Summary Judgment.  On September 21, 2007, Defendants filed a Cross-Motion for Summary Judgment.  The parties have stipulated that, as to Plaintiffs, the DDD has not attempted to enforce Plaintiffs' "contribution to care and maintenance regulation by execution, levy, attachment or garnishment through or in a court of competent jurisdiction."  (Pls.' Statement of Undisputed Material Facts, ¶ 5.)

DISCUSSION

A.    Standard of Review

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," and construes all facts and inferences in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); see also Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). To survive a motion for summary judgment, a plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

B.    Ripeness

The ripeness doctrine stems in part from the Article III requirement that a court decide actual cases or controversies, and in part from prudential limitations. N.E. Hub Partners, L.P. v. CNG Transmission Corp., 239 F.2d 333, 341 (3d Cir. 2001). The purpose of requiring that a claim be ripe for adjudication is to

> prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

Abbott Labs v. Gardner, 387 U.S. 136, 148-49 (1967). The Supreme Court formulated a two-part test for determining whether a claim was ripe for review: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." Id. at

149.  In <u>Step-Saver Data Sys., Inc. v. Wyse Tech.</u>, 912 F.2d 643 (3d Cir. 1990), the Third Circuit modified the <u>Abbott Labs</u> analysis to three factors a court should consider before issuing a declaratory judgment: (1) "the adversity of the parties' interests;" (2) "the probable conclusiveness of a judgment;" and (3) "the practical utility to the parties of rendering a judgment." <u>N.E. Hub</u>, 239 F.3d at 342.

The three-part <u>Step-Saver</u> analysis incorporates factors relevant to the <u>Abbott Labs</u> framework. <u>Id.</u> at n.9.  To determine whether adversity between the parties exists, the court considers "[w]hether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm." <u>Id.</u>  The conclusiveness of the judgment inquires as to "[w]hether issues are purely legal . . . [and] [w]hether further factual development would be useful." <u>Id.</u> The utility analysis considers the "[h]ardship to the parties of withholding decision . . . [and] [w]hether the claim involves uncertain and contingent events." <u>Id.</u>

DISCUSSION

Defendants argue that the Court should dismiss Plaintiffs' claims because they are not yet ripe for review.  Specifically, Defendants argue that Plaintiffs have not suffered any cognizable injuries capable of redress because the DDD has not taken any steps to enforce its regulations against them.  Defendants contend that, not only is the possibility of enforcement against Plaintiffs speculative, it is not at all certain what sanctions, if any, the DDD would impose upon Plaintiffs.  Thus, Defendants assert that the regulations have not impacted Plaintiffs' day-to-day activities.  Plaintiffs argue that the threat of sanctions, including the possibility of a collection action or the termination of the DDD's services, is sufficiently imminent such as to compel them to comply with regulations that they allege violate § 407(a).  Thus, Plaintiffs contend that the

-5-

regulations have altered their day-to-day activities.

A.    Adversity

Courts have not found the parties' interests to be sufficiently adverse "where the chance of the defendant acting against the plaintiff is but a 'contingency.'" N.E. Hub, 239 F.3d at 343. Further, sufficient adversity has not been found where a state has said it would not enforce a challenged law against a plaintiff.  See Presbytery of N.J. of the Orthodox Presbyterian Chuch v. Florio, 40 F.3d 1454, 1464-68 (3d Cir. 1994) (dismissing certain First Amendment claims as unripe, but permitting others where state did not indicate intention not to prosecute).  Here, Plaintiffs admit that the DDD has not taken any steps to enforce its regulations against them.  Thus, the Court finds that the parties' interests are not sufficiently adverse.

B.    Conclusiveness

Under this prong of the Step-Saver analysis, the Court inquires as to "whether a declaratory judgment definitively would decide the parties' rights . . . [and] addresses the extent to which further factual development of the case would facilitate decision, so as to avoid issuing advisory opinions, or whether the question presented is predominantly legal." N.E. Hub, 239 F.3d at 344.

In this case, Plaintiffs ask the Court to declare several different subsections of the DDD's regulations regarding contributions to care and maintenance to be unenforceable because they conflict with federal law.  However, the Court finds that this case is one where further factual development would sharpen the issues presented.  For example, because the DDD has not yet required Plaintiffs to contribute to the cost of their care and maintenance, it is unclear whether the inclusion of Plaintiffs' Social Security benefits in the calculation of their disposable monthly

income will contravene the prohibition on attachment of benefits mandated by § 407(a).

Similarly, it is not yet apparent which measures the DDD might pursue, if any, against Plaintiffs

in order to compel them to use their Social Security benefits towards the cost of care and

maintenance.  The undertaking of a specific measure by DDD to secure Plaintiffs' compliance

with the regulations would better enable the Court to determine whether the agency's action

violates federal law.  Accordingly, the Court finds that the issues presented in this action are not

fit for judicial review at this time.

C.      Utility

        The utility of a declaratory judgment inquires "whether the parties' plans of actions are

likely to be affected [by the issuance of such relief], and considers the hardship to the parties of

withholding judgment."  N.E. Hub, 239 F.3d at 344-45 (internal citation and quotations omitted).

In Abbott Labs, the Supreme Court found that there was sufficient hardship to plaintiff

pharmaceutical manufacturers who would incur tremendous costs associated with complying

with new labeling requirements, alleged to be unconstitutional, by the Food and Drug

Administration.  387 U.S. at 152-53.  The Supreme Court thus found plaintiffs' claims ripe for

review.  Id. at 149, 152.  However, courts have held that the burden imposed by post-

enforcement litigation "does not constitute sufficient hardship to ripen a case that would

otherwise be unripe."  N.E. Hub, 239 F.3d at 346 (internal citation and quotations omitted).

        The record here is devoid of any evidence that would suggest that Plaintiffs have altered

their actions in any way in the absence of any enforcement by the DDD against them.  Unlike the

Abbott Labs plaintiffs, there is no evidence in the record that the Plaintiffs here have or will incur

costs in order to comply with the DDD's regulations.  Similarly, there is no evidence in the

record that suggests that Plaintiffs are no longer able to afford the personal expenses that their Social Security benefits were intended to provide them because they must now divert those benefits to reimburse the DDD. Thus, the Court finds that rendering a declaratory judgment at the pre-enforcement stage would yield little practical utility to the parties.

Accordingly, having found that weighed the factors under <u>Step-Saver</u>, the Court finds that Plaintiffs' claims are not yet ripe for review. Therefore, the Court does not reach the merits of Plaintiffs' claims at this time. The Court denies Plaintiffs' Motion, and grants Defendants' Cross-Motion.

<u>CONCLUSION</u>

For the foregoing reasons, and for good cause shown,

IT IS on this 18th day of April, 2008,

ORDERED that Plaintiffs L.B., P.D., and R.B.'s Motion for Summary Judgment [16] is DENIED; and it is further

ORDERED that Defendants Carol Grant and Kevin M. Ryan's Cross-Motion for Summary Judgment [17] is GRANTED; and it is further

ORDERED that Plaintiffs' Complaint is dismissed without prejudice; and it is further

ORDERED that this case is closed.

            s/ Anne E. Thompson
            ANNE E. THOMPSON, U.S.D.J.